UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EVA HENDERSON,

                Plaintiff,

v.

GEICO, CHRISTOPHER KORKIDIS, and
ERIN STEIN,

                Defendants.

**MEMORANDUM & ORDER**
22-CV-03513 (HG)

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiff Eva Henderson has brought this suit against Defendants Government Employees Insurance Company ("GEICO")[1], Christopher Korkidis, and Erin Stein, alleging violations of Section 105(a)(1)–(2) of the Family and Medical Leave Act ("FMLA"), Section 12112(a) of the Americans with Disabilities Act ("ADA"), Section 296(1)(a), (h) of the New York State Human Rights Law ("NYSHRL"), and Section 623(a)(1) of the Age Discrimination in Employment Act ("ADEA"). ECF No. 1 ¶ 1 (Complaint). Defendants have moved for summary judgment on all claims, *see* ECF No. 37-1 (Defendants' Motion), which Plaintiff opposes, *see* ECF No. 38-5 (Plaintiff's Opposition). For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

    Unless otherwise indicated, the following facts are undisputed. On December 6, 2010, Plaintiff began working for GEICO as a Personal Injury Protection ("PIP") Examiner, which is also known as a No-Fault Examiner. ECF No. 26-4 ¶¶ 1–2 (Plaintiff's Rule 56.1 Counterstatement). Plaintiff was supervised by non-party Nicole Mohan, whose supervisor was Defendant Erin Stein, who in turn reported to Defendant Christopher Korkidis. ECF No. 26-4

---

[1] Defendants note that the case caption improperly named Defendant GEICO instead of Defendant Government Employees Insurance Company. ECF No. 37-1 at 8.

¶¶ 7–14.  In this role, Plaintiff oversaw claim files for medical injury claims sustained in car accidents.  *Id.* ¶ 6.  She provided customer service to the injured parties and ensured compliance items were met for handling paperwork and paying bills.  *Id.*  Plaintiff remained in this position until her termination on March 26, 2021.  *Id.* ¶¶ 2, 47.  The role was a non-exempt position, which meant that Plaintiff was scheduled to work no more than 40 hours per week.  *Id.* ¶ 4.  If Plaintiff worked beyond her scheduled hours, she was required to update her timesheet to reflect the time that she worked.  *Id.*  GEICO was required to pay Plaintiff overtime if her total hours exceeded 40 hours per week.  *Id.*

At the beginning of the COVID-19 pandemic, GEICO directed all non-essential employees to work from home.  *Id.* ¶ 16.  As a condition of working from home, all non-exempt employees were required to sign the Non-Exempt Temporary Work From Home Agreement (the "Agreement").  *Id.* ¶ 17.  Plaintiff signed this Agreement on March 7, 2020.  *Id.*  Even after offices began to re-open, GEICO permitted non-exempt employees to continue to work remotely so long as the employees continued to abide by the Agreement.  *Id.* ¶ 18.  One of the conditions of the Agreement required that non-exempt employees not work outside of their scheduled hours without prior approval.  *Id.*  An employee in Plaintiff's department who was "on warning" was not permitted to work remotely.  *Id.*

Prior to the COVID-19 pandemic, Plaintiff received one warning in September 2018 in relation to "unprofessional comments" made to a medical provider.  ECF No. 23-4 (September 2018 GEICO Warning).  Plaintiff was admonished that if she failed to meet the goals set forth in the warning, she could be subject to "further disciplinary action, up to and including termination of employment."  *Id.*  Throughout 2020, Ms. Mohan and Ms. Stein documented numerous instances of Plaintiff working outside of her scheduled hours and advised her that disregarding

her scheduled hours might result in a warning or disciplinary action. ECF No. 23-5 at 2–7 (Mohan Write-Ups); ECF No. 23-9 at 2–5 (Stein Write-Ups).[2] Plaintiff alleges that she worked beyond her scheduled hours due to taking on the work of "other examiners, repeated technical difficulties, unclear directives, and Defendants' expectations that Plaintiff respond to every single call and/or voicemail" before the end of her workday. ECF No. 26-4 ¶ 27. Plaintiff also alleges that she worked late one day due to a doctor's appointment that she was granted permission to attend under FMLA. *Id.* ¶ 23; *see also* ECF No. 23-7 (January 2021 Emails with Mohan and Henderson). Plaintiff further alleges that she was not informed that she could not perform certain tasks, such as completing her self-assessment, outside of her scheduled hours. ECF No. 26-4 ¶ 26.

On January 28, 2021, Plaintiff received a warning for working in excess of her scheduled hours. ECF No. 23-10 (January 2021 GEICO Warning). The warning documented numerous times during which Plaintiff worked late and was subsequently admonished for doing so. *Id.* Plaintiff was again advised that if she failed to meet the goals set forth in the warning, she could be subject to "further disciplinary action, up to and including termination of employment." *Id.* As a result of this warning, Plaintiff was no longer permitted to work from home and was required to return to work in the office so she could receive support in completing her work on a timely basis. ECF No. 23-3 at 74:12–76:21 (Stein Dep. Tr.). Plaintiff told Ms. Stein that she was "stunned" that she received a warning and asked if there was an alternative option to returning to work in the office because "[w]e are in the middle of a pandemic[,] schools have not reopened[,] [and she] ha[s] a minor at home." ECF No. 23-9 at 3. Ms. Stein informed Plaintiff

---

[2] The Court understands that Plaintiff disagrees with the characterizations of the encounters, but Plaintiff does not dispute that she worked outside of her scheduled hours on these occasions. ECF No. 26-4 ¶¶ 19, 21–25.

3

that measures had been taken "to provide a safe environment while in the building which are in line with the CDC guidelines." *Id.* Ms. Stein further told Plaintiff that she could reach out to GEICO's disability carrier if Plaintiff wished to seek a medical accommodation. *Id.*

Over the next two weeks, before Plaintiff returned to the office, she had conversations with Mr. Korkidis, Ms. Stein, and Ms. Mohan about the warning, her work product, and returning to the office. ECF No. 23-5 at 8; ECF No. 23-9 at 2–4; ECF No. 23-11 (Korkidis Write-Up); ECF No. 23-12 (Korkidis Email to Henderson). Despite Plaintiff's objections, these individuals reiterated to her that the warning was appropriate, she should not work past her scheduled hours, and they would revisit Plaintiff's ability to work from home in six months. ECF No. 23-9 at 2–4; ECF No. 23-11; ECF No. 26-2 at 165:24–166:6 (Henderson Dep. Tr.). On February 5, 2021, Ms. Mohan had a conversation with Plaintiff about her "answer rate" and asked Plaintiff why she missed many calls in the previous five-day period. ECF No. 23-5 at 8. Plaintiff explained that she must have been "documenting"—presumably claims—or busy at the time the calls were missed. *Id.* Ms. Mohan advised Plaintiff on how to forward her phone while in a meeting or while she was away from her desk. *Id.* On February 15, 2021, Mr. Korkidis asked Plaintiff when she planned to return to the office. ECF No. 23-9 at 4; ECF No. 26-4 ¶ 35. Plaintiff indicated that she was going to complete and return a COVID-19 testing kit in advance of her return to the office. ECF No. 23-9 at 4; ECF No. 26-4 ¶ 35.

On February 23, 2021, Plaintiff met with non-party Rob Felice, the Regional Compliance Administrator in GEICO's Human Resources Department. ECF No. 26-4 ¶ 37. After the meeting, Plaintiff emailed Mr. Felice and claimed that other associates were staying five minutes past their scheduled end time. *Id.* Mr. Felice explained that warnings are not issued to employees after only one or two occurrences, but rather after a repeated pattern of conduct, like

4

the conduct Plaintiff exhibited when she consistently worked past her scheduled hours. *Id.* On March 2, 2021, Ms. Stein and Mr. Felice met with Plaintiff regarding the warning. ECF No. 23-9 at 4–5. Plaintiff indicated that she felt she was being targeted and she wanted to be removed from Ms. Stein and Ms. Mohan's team. *Id.* Plaintiff told Ms. Stein that she would "reap what [she] sow[s]." *Id.* at 5; ECF No. 26-2 at 215:21–23; ECF No. 26-4 ¶ 39. On March 3, 2021, Plaintiff entered "inappropriate unrelated documentation" on a client's claim. ECF No. 23-9 at 5; ECF No. 26-4 ¶ 41. Specifically, Plaintiff noted, among other things, "takes us 24 hrs for details I advised sup in claim before 430 system issues all day it is noted," "atlas went down alll [*sic*] day," "then my computer shut down 2 times," and "i got kicked out 2 times and rebooted today . [*sic*] this was not a good day." ECF No. 23-9 at 5.[3]

The parties dispute whether Ms. Stein decided to have Plaintiff's employment reviewed on March 4, 2021, or on March 8, 2021. ECF No. 26-4 ¶ 42. Nevertheless, is it undisputed that on March 8, 2021, Ms. Stein advised Plaintiff that based on Plaintiff's comments in the meetings with hers supervisors "which were demeaning in nature, inappropriate and not professional," and Plaintiff's inappropriate documentation on a client's claim file, GEICO was "reviewing [Ms. Stein's] recommendation that she be terminated," and that Plaintiff could provide a statement by the end of the day. *Id.* ¶ 43. After the conversation, Plaintiff indicated to Ms. Stein that she was not feeling well and would be going home. *Id.* Plaintiff explained she believed it could be COVID-19 because she had been seated at a desk that was not at least six feet from another GEICO employee's desk. *Id.* Plaintiff then quarantined at home for ten days. *Id.* ¶ 45.

---

[3]     The Court understands that Plaintiff believed this information was not publicly accessible and was for internal use only. ECF No. 26-4 ¶ 41.

Shortly after Plaintiff began her quarantine period, she applied for leave under the FMLA from GEICO's short-term disability carrier, The Hartford, for a pre-existing foot injury. *Id.* ¶¶ 44–45; ECF No. 23-15 (The Hartford Letter). On March 11, 2021, The Hartford approved Plaintiff for Short Term Disability benefits from March 9, 2021, to March 19, 2021. ECF No. 26-4 ¶ 45; ECF No. 23-15. Plaintiff's leave overlapped with the time she was away from work because of her alleged COVID-19 exposure. ECF No. 23-1 at 209:4–21 (Henderson Dep. Tr.). Plaintiff was expected to return to work on March 23, 2021. ECF No. 26-4 ¶ 45; ECF No. 23-15.

On March 25, 2021, after Plaintiff did not return to work on March 23, Ms. Stein and Ms. Mohan contacted Plaintiff to ask whether she planned to return to work. ECF No. 26-4 ¶ 46. Plaintiff informed them that she had a doctor's appointment the next day and would reach out to The Hartford after that appointment. *Id.* Ms. Stein informed Plaintiff that a decision regarding terminating her employment was still pending. *Id.* The parties dispute whether Ms. Stein told Plaintiff that if she did not come to work that day, she would be fired. ECF No. 26-4 ¶ 46; ECF No. 26-3 at 349:10–11. Plaintiff was terminated on March 26, after she failed to return to work. ECF No. 1 ¶ 15; ECF No. 26-4 ¶ 47.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[4]  The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

In deciding a summary judgment motion, any ambiguities and justifiable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).  Although "courts must refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments," a plaintiff must defeat summary judgment by putting forth "evidence on which the jury could *reasonably* find for the non-moving party." *Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 456 (2d Cir. 2022) (affirming summary judgment dismissing complaint) (emphasis in original).  However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247 (emphasis in original).  Indeed, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249–50 .

---

[4]  Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

## DISCUSSION

### I.     Plaintiff's ADA and ADEA Claims

In their opening brief, Defendants argue that Plaintiff's ADA and ADEA claims must be dismissed because she has failed to exhaust administrative remedies and because the individual defendants cannot be liable for these claims.  ECF No. 37-1 at 18–19.  Although Plaintiff maintains Defendants are liable under the ADA and ADEA in her Opposition, *see* ECF No. 38-5 at 11, she does not address these specific arguments,[5] nor does she deny that she failed to raise any claim with the Equal Employment Opportunity Commission ("EEOC") or any other agency with the authority to investigate her claims.  For the reasons set forth below, the Court agrees with Defendants that Plaintiff has not exhausted these claims and therefore grants this portion of Defendants' motion.

Before commencing an action in federal court alleging violations of the ADA and ADEA, a plaintiff must first file a timely charge with the EEOC or with a state or local agency with authority to grant a plaintiff relief from a discriminatory practice.  *See Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 352 (E.D.N.Y. 2013) (applying to ADEA claims); *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 60–61 (S.D.N.Y. 2019) (applying to ADA claims); *see also* 42 U.S.C. § 2000e-5(e), (f) (procedures for filing with the EEOC).  "[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency," and "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC

---

[5]     Although Defendants argue in their reply that Plaintiff has effectively abandoned these claims, *see* ECF No. 39-5 at 5–6 (Defendants' Reply), the Court nonetheless analyzes whether these claims were properly exhausted before they were brought in federal court.

investigation which can reasonably be expected to grow out of the charge that was made." *Deravin v. Kerik*, 335 F.3d 195, 200–01 (2d Cir. 2003).

It is undisputed that Plaintiff did not file a claim with the EEOC or dual-file with the New York State Division of Human Rights ("NYSDHR") or the New York City Commission of Human Rights ("NYCCHR") within the 300-day filing deadline. *See* 42 U.S.C. § 2000e–5(e)(1) ("[S]uch charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred[.]"). Because no charge or complaint with any agency has been filed, the claims are unexhausted and the Court cannot make a finding that Plaintiff's ADA or ADEA claims are "reasonably related" to any EEOC investigation. The Court therefore grants summary judgment to Defendants on these claims for Plaintiff's failure to exhaust administrative procedures. *Elliot-Leach v. N.Y.C. Dep't of Educ.*, 710 F. App'x 449, 451 (2d Cir. 2017) (affirming dismissal of ADEA and ADA claims for failure to exhaust).[6]

## II.     Plaintiff's FMLA Claims

"The FMLA entitles eligible employees to twelve workweeks of unpaid leave per year for, *inter alia*, certain serious health conditions that prevent the employee from performing her job duties." *Douyon v. N.Y.C. Dep't of Educ.*, 665 F. App'x 54, 56 (2d Cir. 2016). It creates "a private right of action for an employee to seek both equitable relief and money damages against an employer that interferes with, restrains, or denies the exercise of FMLA rights." *Id.* To ensure that eligible employees are not deprived of their statutory rights, the FMLA makes it unlawful for an employer "(1) 'to interfere with, restrain, or deny the exercise of or the attempt

---

[6]     Although the Court need not reach this argument, I separately find that these claims would not survive against the individual defendants because individuals are not liable under the ADA and ADEA. *Jones v. N.Y.C. Dep't of Educ.*, 286 F. Supp. 3d 442, 447 (E.D.N.Y. 2018) (individuals not liable under ADEA); *Sherman v. Cnty. of Suffolk*, 71 F. Supp. 3d 332, 343 (E.D.N.Y. 2014) (no individual liability for discrimination or retaliation under the ADA).

to exercise, any right' established by the FMLA, or (2) 'to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful' by the FMLA." *Greenberg v. State Univ. Hosp.-Downstate Med. Ctr.*, No. 15-cv-2343, 2019 WL 4752018, at *14 (E.D.N.Y. Sept. 29, 2019) (quoting 29 U.S.C. § 2615(a)), *aff'd,* 838 F. App'x 603 (2d Cir. 2020). Here, Plaintiff alleges that Defendants "attempted to interfere with Plaintiff's exercise of her rights under the [FMLA], as they inquired about Plaintiff's medical condition, demanded that she sign in for work, and terminated Plaintiff's employment simply because she was on an authorized medical leave." ECF No. 1 ¶ 18.

### A. FMLA Interference

"To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). To do so, "a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Id.*

The parties only dispute the fifth factor, whether Plaintiff was denied benefits she was entitled to under the FMLA. Although Plaintiff "does not state that [s]he was ever prevented from actually taking FMLA leave," *Greenberg*, 2019 WL 4752018, at *17, Plaintiff argues her rights were interfered with in the form of intimidation, harassment, and threats—namely from the inquiries about whether she was returning to work. ECF No. 38-5 at 6. As the Second Circuit recently held, an employer may be liable for FMLA interference where an employer "interfered with but ultimately did not deny her use of FMLA benefits." *Kemp v. Regeneron*

10

*Pharms., Inc.*, 117 F.4th 63, 69 (2d Cir. 2024). Nevertheless, there is no evidence in the record that Defendants interfered with Plaintiff's use of her FMLA benefits.

First, it is undisputed that Plaintiff requested and was approved for FMLA leave from March 9, 2021 through March 19, 2021. ECF No. 23-15. Ms. Stein and Ms. Mohan did not ask Plaintiff whether she intended to return to work until March 25, 2021, two days after March 23, 2021, the date on which they believed she was supposed to return to work. ECF No. 26-4 ¶¶ 45–46; *see also* ECF No. 23-15. Even though Plaintiff indicated to Ms. Stein and Ms. Mohan that she had a scheduled doctor's appointment on March 26, 2021, and that she was going to reach out to The Hartford afterwards, she does not dispute that at the time she received the call, her FMLA leave had ended. *Id.* This is also supported by the dates of leave provided by The Hartford in the March 11, 2021, letter. ECF No. 23-15. Therefore, even if Ms. Stein told Plaintiff that she would be fired if she did not come into work, ECF No. 26-4 ¶ 46; ECF No. 26-3 at 347:10–11, that comment alone would be insufficient to amount to interference, because, at that time, Plaintiff's FMLA leave was over.[7]

The Court addresses below, *see infra* § II.B, Plaintiff's argument that she was terminated *because* she took her FMLA leave—an argument that is consistent with FMLA retaliation, not FMLA interference. *See LeClair v. Berkshire Union Free Sch. Dist.*, No. 08-cv-01354, 2010 WL 4366897, at *6 (N.D.N.Y. Oct. 28, 2010) ("Plaintiff's theory of interference by termination

---

[7]  This is different from a scenario in which a supervisor communicates to an employee that is out of work on pre-approved FMLA leave that her employment may be in jeopardy if she continued to take already-approved FMLA leave. *See, e.g.*, *Patel v. Long Island Univ.*, No. 17-cv-2170, 2020 WL 869125, at *5 (E.D.N.Y. Feb. 21, 2020). If that were the case here, a jury could reasonably find that "Plaintiff tried to assert [her] FMLA rights and was thereafter discouraged from taking FMLA leave." *Id.* But those are not the facts of this case. Rather, Defendants first informed Plaintiff that her employment was under review *prior* to Plaintiff's request for FMLA leave. ECF No. 26-4 ¶ 43. Defendants then inquired about Plaintiff's return to work *after* her FMLA leave was over. *Id.* ¶¶ 45, 46. This record, therefore, does not support a claim of interference with Plaintiff's rights under the FMLA.

11

is merely a retaliation theory in disguise."); *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 203 (S.D.N.Y. 2009) (plaintiff's interference claim "really is no more than an effort to dress [plaintiff's] retaliation claim in (barely) different clothing"). However, because there is no evidence to support a conclusion that Defendants interfered with Plaintiff's FMLA leave, Defendants are granted summary judgment on this claim. *Cf. Pearson v. Unification Theological Seminary*, 785 F. Supp. 2d 141, 162 (S.D.N.Y. 2011) ("[I]t is well-settled that an employer is not liable for 'interfering' with an employee's leave when the employee would have been terminated regardless of the leave.").

        B.        FMLA Retaliation

FMLA retaliation claims are analyzed under the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Graziadio*, 817 F.3d at 429. To establish a *prima facie* case of FMLA retaliation, Plaintiff must establish that: (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012). Plaintiff's burden in establishing her *prima facie* case is "minimal." *Philippe v. Santander Bank, N.A.*, No. 15-cv-2918, 2018 WL 1559765, at *5 (E.D.N.Y. Mar. 31, 2018) ("Plaintiff has sufficiently established the 'minimal' requirements of a prima facie case of FMLA retaliation"). "If the plaintiff makes out a prima facie case, the defendant must demonstrate a legitimate, non-discriminatory reason for its actions; if the defendant does so, the plaintiff must then show that defendant's proffered explanation is pretextual." *Graziadio*, 817 F.3d at 429.

There is no dispute that Plaintiff has established the first, second, and third prongs of a *prima facie* case—that Plaintiff exercised her rights under the FMLA, she was qualified for her position, and she suffered an adverse employment action in the form of termination.  The parties' source of disagreement lies with the fourth prong—whether her termination occurred under circumstances giving rise to an inference of retaliatory intent.  Although Plaintiff concedes that she was informed by Ms. Stein that Plaintiff's employment was under review *before* Plaintiff applied for FMLA leave, *see* ECF No. 26-4 ¶ 42,[8] she argues that she was ultimately terminated *because* she took FMLA leave, *see* ECF No. 38-5 at 10.  The Court therefore assumes *arguendo* that Plaintiff has made out her *prima facie* case, but, as explained below, grants this portion of Defendants' summary judgment motion because, in shifting the burden back to Defendants, the Court finds they have put forth legitimate reasons for Plaintiff's termination that are unrelated to Plaintiff's FMLA leave.  *Greenberg*, 2019 WL 4752018, at *20.

Defendants assert that Plaintiff was fired for several reasons, including:  "(1) repeatedly working outside of her scheduled hours, resulting in a formal warning; (2) while on a warning, violating GEICO's Code of Conduct by inputting inappropriate notes into a claim file; and (3) engaging in insubordinate and unprofessional behavior towards a supervisory employee."  ECF No. 37-1 at 16.  The record supports this.  Just over a month prior to taking FMLA leave, Plaintiff was given a formal warning requiring her to return to the office because she was unable to complete her work within her scheduled hours.  ECF No. 23-10.  Subsequent to that warning, Plaintiff had conversations with her supervisors about the warning and her call rate.  ECF No. 23-5 at 8; ECF No. 23-9 at 2–5.  During a conversation about the warning, Plaintiff told Ms.

---

[8]  Regardless of whether Ms. Stein made the decision to terminate Plaintiff on March 4, 2021, or on March 8, 2021, both dates were prior to when Plaintiff applied for short-term disability on March 9, 2021.  ECF No. 26-4 ¶ 42; ECF No. 23-15.

13

Stein that she would "reap what [she] sow[s]." ECF No. 23-9 at 5; ECF No. 26-2 at 215:21–23; ECF No. 26-4 ¶ 39. The next day, Plaintiff documented technical issues she was encountering on a client's claim file. ECF No. 23-9 at 5.

Having met their burden of "demonstrat[ing] a legitimate, non-discriminatory reason for [their] actions," the burden shifts back to Plaintiff to demonstrate that her termination was pretextual. Plaintiff fails to satisfy this burden. The only fact she puts forward is that she was not officially terminated until *after* she took FMLA leave. ECF No. 26-4 ¶ 47; ECF No. 1 ¶ 15. However, "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013). Furthermore, Plaintiff's argument is belied by the undisputed fact that Ms. Stein informed Plaintiff that her employment was under review *before* she applied for FMLA leave. *See* ECF No. 26-4 ¶ 42; *cf. Douyon*, 665 F. App'x at 57 (affirming summary judgment where plaintiff was notified of termination before requesting FMLA leave). Plaintiff has put forth no additional evidence showing that her termination was pretextual. Her FMLA retaliation claim therefore fails and Defendants are granted summary judgment on that claim.

### III.   Plaintiff's NYSHRL Claim

Plaintiff's final cause of action alleges Defendants violated the NYSHRL by terminating her after she took medical leave for her "significant foot issue." ECF No. 1 ¶ 31. Specifically, she alleges that "Defendants discriminated against Plaintiff regarding the conditions and privileges of her employment by harassing her about her disability and wrongfully discharged Plaintiff as her termination was due to the invocation of her rights." *Id.* ¶ 32. In analyzing Plaintiff's allegation, the Court reads it to sound in both discrimination and retaliation. *See* ECF No. 38-5 at 12–13 (Plaintiff "saw her employment terminated all due to her exercise of her rights

to FMLA leave."). For the sake of completeness, the Court will analyze Plaintiff's NYSHRL claim in both the discrimination and retaliation contexts. Both of these claims are analyzed under the *McDonnell Douglas* burden-shifting framework discussed above. *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, No. 20-3718, 2022 WL 1715977, at *2 (2d Cir. May 27, 2022) (applying to retaliation); *Cherry v. N.Y.C. Hous. Auth.*, 564 F. Supp. 3d 140, 177 (E.D.N.Y. 2021) (applying to discrimination).

    A.    *Discrimination*

To establish a *prima facie* case for discrimination,[9] Plaintiff must show that: (1) she belonged to a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 455 (S.D.N.Y. 2023). Plaintiff's burden of proving her *prima facie* case is "minimal." *Id.*

The parties do not dispute the first three factors. ECF No. 37-1 at 26–27; ECF No. 38-5 at 12–13. Rather, they dispute whether the evidence supports an inference that Plaintiff's termination resulted from disability discrimination. ECF No. 37-1 at 26–27; ECF No. 38-5 at 12–13. The Court finds that Plaintiff has failed to adduce evidence on which a jury could find that her termination was a result of her disability, namely, her foot injury. *See Wheeler*, 694 F. Supp. 3d at 461 (summary judgment granted to defendants on discrimination claim where plaintiff provided no evidence to link defendants' conduct with plaintiff's protected

---

[9]     "Historically, claims of disability discrimination under the NYSHRL were governed by the same legal standards as govern federal ADA claims." *Passante v. Cambium Learning Grp.*, No. 23-cv-4060, 2024 WL 4171026, at *5 (E.D.N.Y. Sept. 12, 2024). However, after the New York State Legislature passed several amendments to the NYSHRL in June 2019, courts have analyzed disability claims arising the NYSHRL under the more liberal standard of the New York City Human Rights Law ("NYCHRL"). *Id.* (citing cases).

15

characteristics). Plaintiff relies squarely on her own speculation that she was "terminated all due to her exercise of her rights to FMLA leave." ECF No. 38-5 at 12–13. Although it is true as a temporal matter that Plaintiff was terminated after she took her FMLA leave for her foot injury, there is no evidence indicative of discrimination against Plaintiff for her injury (or against any other disabled person). To the contrary, the record indicates that Plaintiff was given time to go to the doctor during her working hours to address the injury, *see* ECF No. 23-7, and that she was granted FMLA leave when she requested it, *see* ECF No. 23-15. Notably, Plaintiff fails to cite to any direct evidence of discrimination "such as inflammatory or discriminatory comments regarding Plaintiff's disability." *Ferraro v. N.Y.C. Dep't of Educ.*, 404 F. Supp. 3d 691, 712 (E.D.N.Y. 2017), *aff'd,* 752 F. App'x 70 (2d Cir. 2018). Nor has Plaintiff provided any indirect evidence by "identifying any comparators whose treatment by Defendants would support an inference of discrimination." *Id.* The Court therefore finds that Plaintiff has failed to to make out a *prima facie* case of discrimination under the NYSHRL due to her disability.

Even if Plaintiff had made out a *prima facie* case of discrimination, the Court nevertheless finds, under the *McDonnell Douglas* burden shifting framework, that Defendants have come forward with legitimate, non-discriminatory reasons for her termination, *see supra* § II.B. As discussed above, "the record is replete with evidence supporting [the] legitimate bas[es] for termination." *Fall v. N.Y. State United Tchrs.*, 289 F. App'x 419, 421 (2d Cir. 2008) (affirming summary judgment dismissing disability discrimination claim). Because Defendants have put forward legitimate, non-discriminatory reasons for Plaintiff's termination, the burden then shifts back to her to show that her termination was pretextual. Once again, Plaintiff has put forth no evidence indicating that Defendants' stated reasons for her termination were a mere pretext. Accordingly, "there just is nothing in the record except [Plaintiff's] own conclusion that

16

this termination was somehow invented or concocted to cover up the disability discrimination." *Id.* at 422. Summary judgment is therefore granted to Defendants on this claim.

### B. Retaliation

To establish a *prima facie* case for retaliation, Plaintiff must show that: "(1) that she participated in an activity protected by [the] NYSHRL, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Wheeler*, 694 F. Supp. 3d at 462; *see also Razzano*, 2022 WL 1715977, at *2 ("To make out a *prima facie* case of retaliation, a plaintiff must establish, among other elements, 'a causal connection' between the plaintiff's protected activity and an adverse employment action"). "Under the last element, a plaintiff must show that the adverse employment action took place under circumstances giving rise to an inference of discrimination." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).

The parties do not dispute that Plaintiff's termination constitutes an adverse employment action. *See Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 167 (2d Cir. 2024) ("Here, there is no dispute that [the plaintiff] . . . suffered at least one adverse action — the termination of his employment"). Nor do the parties dispute that Plaintiff engaged in a protected activity when she took FMLA leave for her foot injury. *Bernheim v. N.Y.C. Dep't of Educ.*, No. 19-cv-9723, 2021 WL 2619706, at *12 (S.D.N.Y. June 25, 2021) (plaintiff "adequately pled that she engaged in a protected activity under the ADA by requesting FMLA leave as an accommodation"), *report and recommendation adopted*, 2021 WL 4198126 (S.D.N.Y. Sept. 15, 2021).

17

The parties, however, dispute whether there is a causal connection between the protected activity and Plaintiff's termination. Plaintiff alleges the causal connection exists in the sense that she was "harassed, intimidated, threatened," and ultimately terminated by Defendants after she went out on FMLA leave for her foot injury. ECF No. 38-5 at 12–13. Defendants contend that this argument ignores the fact that the decision to review Plaintiff's employment was made prior to her applying for, and taking, FMLA leave. ECF No. 37-1 at 27. Once again, the Court assumes *arguendo* that Plaintiff has made out her *prima facie* case, but, for the reasons previously articulated, *see supra* § II.B, the Court finds that granting Defendants' motion on this issue is proper. Specifically, Defendants have articulated legitimate, non-discriminatory reasons for Plaintiff's termination that are unrelated to Plaintiff's foot injury or FMLA leave. *See supra* § II.B. The burden therefore shifts back to Plaintiff to offer evidence that Plaintiff's participation in the protected activity—here, taking FMLA leave—was the real reason for her termination. And, as articulated above, Plaintiff has failed to put forth any evidence to establish that the stated reasons for her termination were pretextual. *See supra* § II.B; *Zann Kwan*, 737 F.3d at 847; *see also New Falls Corp. v. Soni*, No. 16-cv-06805, 2024 WL 1241982, at *6 (E.D.N.Y. Mar. 22, 2024) ("It is well-established that naked efforts to stir up doubt without any basis in the evidentiary record are insufficient."). Defendants are thus granted summary judgment on this claim.

## **CONCLUSION**

For the reasons set forth above, the Court grants Defendants' summary judgment motion in its entirety. *See* ECF No. 37. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
November 6, 2024